Case 2:20-mc-00651-JNP  Document 21  Filed 12/10/20  PageID.558  Page 1 of 5

FILED
2020 DEC 10 AM 11:18
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALCON VISION, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LENS.COM, INC.,<br><br>　　　　　Defendant.<br><br>CHAD COSTELLO,<br><br>　　　　　Movant. | **MEMORANDUM DECISION AND ORDER OVERRULING OBJECTION TO DISCOVERY ORDER**<br><br><br>Case No. 2:20-mc-000651-JNP-DBP<br><br>Judge Jill N. Parrish |

　　　　Movant Chad Costello objects to Magistrate Judge Pead's order denying his motion to quash the deposition subpoena issued by the United States District Court for the Eastern District of New York. ECF No. 15. When a party objects to a magistrate judge's non-dispositive ruling, district courts employ a "clearly erroneous or . . . contrary to law" standard of review. FED. R. CIV. P. 72(a). Under this deferential standard, the court will affirm the ruling unless the court, exercising independent judgment, "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *accord Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

　　　　Costello asserts two main arguments to this court. First, he argues that Judge Pead's order was contrary to law because he applied the wrong legal standard to determine whether Costello's potential deposition testimony would be relevant to Alcon Vision, LLC's claims in the New York litigation. Second, Costello contends that the order is contrary to law and clearly erroneous because his deposition would not be proportional to the needs of that litigation. The court concludes that

the order denying the motion to quash is neither clearly erroneous nor contrary to law. Accordingly, the court OVERRULES Costello's objection.

I.     **RELEVANCE**

Costello first argues that Judge Pead's order is contrary to law because his deposition testimony, as a matter of law, would not be relevant to the New York litigation. Alcon asserted a Lanham Act claim against Lens.com for grey-market sales of its products. The Act does not impose liability for the sale of grey-market products unless the goods are deemed not to be "genuine." *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009). To show that grey-market goods are not genuine, the trademark owner must prove that "(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner-Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3, 6 (2nd Cir. 1996).

Judge Pead's order applied this standard and found that Costello's deposition testimony may be relevant to the question of whether Alcon's purported quality control procedures are legitimate, substantial, and nonpretextual. Costello argues that this conclusion is wrong as a matter of law under *Zino Davidoff*, 571 F.3d 238. In that case, the Second Circuit affirmed a preliminary injunction against a retailer that removed the plaintiff's unique production codes (UPCs) from cologne packaging and bottles. *Id.* at 241–42, 247. Applying the three-part quality control procedures test, that court held that the plaintiff would likely prevail on its trademark infringement claim because the plaintiff used the UPCs for legitimate, substantial, and nonpretextual quality control procedures to detect counterfeit goods and to identify defective products in case of a recall. *Id.* at 244–46. Because the UPCs were part of the plaintiff's legitimate quality control procedures, the Second Circuit held that the plaintiff's use of the UPCs to detect grey-market goods did not

defeat its trademark infringement claim. *Id.* at 245. In other words, the plaintiff's dual motive for using the UPCs on its packaging—both as a legitimate, nonpretextual quality control procedure and as a method for detecting grey-market goods—was not fatal to the infringement claim.

Costello argues that because his deposition testimony could only be relevant to Alcon's desire to curtail grey-market sales of its goods, under *Zino Davidoff*, his testimony would have no bearing on the question of whether Alcon had established legitimate, substantial, and nonpretextual quality control procedures. The court disagrees. *Zino Davidoff* did not hold that a trademark owner's motive to curb grey-market sales was irrelevant to a determination of whether the owner had established legitimate—as opposed to pretextual—quality control procedures. It held that that if a trademark owner proves that it has enacted legitimate quality control procedures, a concurrent desire to use the quality control procedures to curtail grey-market sales will not defeat the owner's trademark infringement claim.[1]

Because Costello's deposition testimony may be relevant to the issue of whether Alcon's packaging is part of a legitimate, substantial, and nonpretextual quality control procedure, the court determines that Judge Pead's order denying Costello's motion to quash is not contrary to law.

---

[1] The New York court presiding over the underlying Alcon litigation agrees. In a Report and Recommendation recommending the denial of a motion for a preliminary injunction, which was adopted by the district court, Magistrate Judge Mann rejected a similar argument made by Alcon, stating that "Alcon overstates the breadth of the ruling in Zino Davidoff." ECF No. 9, Ex. L, p. 47. Judge Mann also suggested that evidence of Alcon's motive to track grey-market sales was relevant to her determination that its quality control procedures were pretextual. *Id.* at p. 45–46. Of course, the New York court will make the ultimate determination of whether Costello's testimony is relevant or not. Therefore, this court defers to the New York court's strong indication that testimony on Alcon's motive for instituting the packaging changes will be relevant to the issues in that litigation.

## II. PROPORTIONALITY

Costello also argues that Judge Pead erred because Lens.com's deposition would not be proportionate to the needs of the New York litigation. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Costello asserts that Alcon does not dispute that its packaging changes were designed to reduce grey-market sales. He contends that because his testimony would only go to Alcon's motive for instituting its packaging changes, his deposition would not add anything to the New York litigation. Thus, he reasons that his deposition would be disproportionate to the needs of that case.

Setting aside the question of whether Costello, a third party to the New York litigation, has standing to object on proportionality grounds, the court disagrees with Costello's assertion that his testimony would be completely useless to Lens.com's defense against Alcon's trademark infringement claim. Although Alcon may have conceded that it was motivated in part by a desire to curtail grey-market sales when it made the packaging changes, it has not conceded that this alleged quality control measure was pretextual. Costello may have information relevant to the question of whether the prime motivation for Alcon's packaging changes was to control grey-market sales. In other words, his testimony may shed light on whether Alcon's quality control explanation for the packaging changes is merely pretext. Because the court disagrees with Costello's assertion that his testimony would be worthless to the issues being litigated in the New

York action, the court rejects his proportionality argument.[2] Accordingly, Judge Pead's order is neither clearly erroneous nor contrary to law.

## CONCLUSION

The court OVERRULES Costello's objections to Judge Pead's order denying his motion to quash.

Signed December 10, 2020.

BY THE COURT:

_____
JILL N. PARRISH
United States District Judge

---

[2] Additionally, Costello did not properly brief his proportionality argument before Judge Pead until his reply brief. Judge Pead was within his discretion to decline to quash the deposition subpoena based upon an argument raised for the first time in a reply brief.